IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KATHERINE B. RIVAS-LEMUS,

        Plaintiff,

   v.                                    Civil Action No. 3:21cv528

HENRICO COUNTY, *et al.*

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Henrico County's ("Henrico" or "the County") Motion to Dismiss Plaintiff Katherine Rivas-Lemus's Amended Complaint (the "Motion to Dismiss"). (ECF No. 19.) Rivas-Lemus brings this action against the County; the Henrico County Sheriff's Office; former Henrico County Sheriff Michael L. Wade (in his individual and official capacity); current Henrico County Sheriff Alisa Gregory (in her individual and official capacity) (collectively with Michael L. Wade, the "Sheriffs"); and unnamed officers of the Henrico County Sheriff's Office John Does 1 through 10, in their individual and official capacities (the "Officers"). (ECF No. 15.)

In her Amended Complaint, Rivas-Lemus claims that Defendants falsely imprisoned her and violated her constitutional rights under the Virginia Constitution and as protected by 42 U.S.C. § 1983[1] and the Fourth, Eighth and Fourteenth Amendments of

---

[1] This statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

the United States Constitution.[2]  (ECF No. 15.)  This occurred when Rivas-Lemus was

detained at Henrico County Jail West pursuant to an non-mandatory immigration detainer

request, despite her protection under the Deferred Action for Childhood Arrivals program

("DACA"), and was subjected to an unwanted pregnancy test and overcrowded, poorly-

ventilated, and unsanitary jail conditions.  (ECF No. 15.)

 The County filed a Motion to Dismiss Rivas-Lemus's Amended Complaint, (ECF

No. 19), and Rivas-Lemus responded.  (ECF No. 22.) The County replied.  (ECF No. 23.)

This matter is ripe for adjudication.  The Court dispenses with oral argument because the

materials before it adequately present the facts and legal contentions, and argument would

not aid the decisional process.  The Court exercises jurisdiction pursuant to 28 U.S.C.

§§ 1331, 1343, and 1367.[3]  For the reasons that follow, the Court will grant the Motion

to Dismiss.

---

 injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

 [2] Not all counts raise all three Constitutional Amendments as a basis.

 [3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a). Rivas-Lemus brings her claims under 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. (ECF No. 15, at 15–17.) The Court exercises supplemental jurisdiction over Rivas-Lemus's state law claims, as they arise from the same case or controversy as her federal law claims. *See* 28 U.S.C. § 1367(a).

## I. Factual and Procedural Background

A.      **Factual Background**[4]

Rivas-Lemus's claims stem from her detention at Henrico County Jail West from August 17, 2019, through August 19, 2019. (ECF No. 15 ¶ 11.) "At approximately 1:00 [a.m.] on August 17, 2019, [Rivas-Lemus] was arrested in response to a domestic dispute phone call[5] and taken to Henrico County Jail West." (ECF No. 15 ¶ 13.) Although officers initially informed Rivas-Lemus "she would be released in short order after receiving a [personal recognizance ('PR')] bond from a magistrate," they "later told [her she] needed to wait until 6:00 [a.m.] to be released when she would be 'sober.'" (ECF No. 15 ¶¶ 13–14.) Rivas-Lemus informed the deputies that she was not intoxicated and requested, but was denied, a sobriety test. (ECF No. 15 ¶ 14.)

At approximately 8:30 a.m., still on August 17, the Henrico County Sheriff's Office received an immigration detainer request that indicated "there was probable cause that [Rivas-Lemus] was a removable alien." (ECF No. 15 ¶ 19–20.) The detainer requested that the Department of Homeland Security be notified "before the alien [was] released from [the Sheriff's] custody" and that the Sherriff "[m]aintain custody of the alien for a period not to exceed 48 hours beyond the time when [she] would otherwise have been released." (ECF No. 15 ¶ 21) (emphasis removed). The detainer stated that "[t]he alien must be served with a copy of [the] form for the detainer to take effect." (ECF

---

[4] For the purpose of a Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

[5] The charges stemming from Rivas-Lemus's arrest ultimately were dismissed. (ECF No. 15 ¶ 48.)

No. 15 ¶ 21) (emphasis removed).  The officers never served Rivas-Lemus with a copy of the immigration detainer form.  (ECF No. 15 ¶ 23.)

At approximately 9:00 a.m. on August 17, Rivas-Lemus appeared before "a magistrate [judge] who gave [her] an unsecured PR bond ordering her release" and told her that "she would be released soon because she had no criminal record."  (ECF No. 15 ¶¶ 16–17.)  Rivas-Lemus then returned to the jail's waiting area.  (ECF No. 15 ¶ 17.)  At 9:16 a.m., the magistrate judge issued an order instructing the Sheriff to release Rivas-Lemus.  (ECF No. 15 ¶ 24.)  After she had waited in the jail for thirty to forty-five minutes, an officer "informed [Rivas-Lemus that] they would be booking her into the jail."  (ECF No. 15 ¶ 18.)

During booking, officers required Rivas-Lemus to "strip naked, turn around, bend over, and cough" and to urinate into a cup for an "unwanted" pregnancy test.  (ECF No. 15 ¶¶ 27, 28, 29.)  Officers then placed Rivas-Lemus "in one large cell, with six smaller room-like cells inside."  (ECF No. 15 ¶ 30.)  "Each [of the smaller cells] contained three beds[] and one bathroom."  (ECF No. 15 ¶ 30.)  Although "the space and number of beds suggest[ed] [the cell] was designed to hold about [twelve] to [eighteen] people, there were between [thirty-five] and [forty] women in [Rivas-Lemus's] cell."  (ECF No. 15 ¶ 30.)  The number of women in the cell made it such "that there was not really room to walk[,]" and the only available spot to lay her sleeping mat was "under a table in the room."  (ECF No. 15 ¶ 31.)

Rivas-Lemus could not access the toilets in "some of the rooms because inmates . . . refused her entry to their room."  (ECF No. 15 ¶ 32.)  "When [Rivas-Lemus] finally obtained access to a toilet, she was presented with unsanitary conditions that she

describe[d] as 'gunk' on the toilets and the sinks" and no toilet paper. (ECF No. 15 ¶¶ 32, 34.) "The toilets and sinks were never cleaned," and the deputies never brought toilet paper during Rivas-Lemus's detention. (ECF No. 15 ¶¶ 33, 35.)

"Throughout her entire time in the jail, [Rivas-Lemus] complain[ed] of stifling and unbearable heat" that, "[t]ogether with the overcrowding . . . and unsanitary conditions[,] led to a bad, stinky smell that filled the entire room." (ECF No. 15 ¶¶ 37–38.) There were no windows for a breeze and the single fan used to circulate air through the room was "[o]n occasion," turned by deputies "to face their window, instead of toward the open room." (ECF No. 15 ¶¶ 39–40.) "At . . . 5:00 a.m. on August 18[,] a fight broke out in [Rivas-Lemus's] cell over use of one of the bathrooms." (ECF No. 15 ¶ 41.) Rivas-Lemus also reported sexual harassment by an inmate who persistently "touch[ed] [Rivas-Lemus's] backside" and that officers denied her medicine for "a painful headache." (ECF No. 15 ¶¶ 42–44.)

At 3:16 p.m. on August 19, 2019, officers released Rivas-Lemus from the jail after the immigration detainer request "appear[ed]" to be "lifted." (ECF No. 15 ¶¶ 46–47.) "Since her release, [Rivas-Lemus has] report[ed] experiencing intense anxiety, vertigo, nausea, vomiting, potential hallucinations, post[-]traumatic stress disorder (PTSD), and other symptoms she did not experience prior to her arrest and detention." (ECF No. 15 ¶ 49.) She "has received medical treatment to help her manage the trauma," but "some of [her] symptoms persist today." (ECF No. 15 ¶¶ 51–52.)

Rivas-Lemus claims that "[t]he hardships [she] endured . . . in Henrico County Jails are [part of] a years-long, well known, and well-documented problem," as evidenced by Google reviews and news coverage dating back to 2017 citing issues with

5

overcrowding, hot temperatures, and sewage.  (ECF No. 15 ¶¶ 53–56.)  Sheriff Wade had

"presented information about Henrico Jails and overcrowding issues via meetings with the

Henrico County Manager and Board of Supervisors[,]" and that members of the Henrico

County Board of Supervisors had been "tasked with looking into alternatives to detention"

to alleviate overcrowding.  (ECF No. 15 ¶¶ 60, 63.)

**B.**     **Procedural Background**

The County filed a Motion to Dismiss Rivas-Lemus's original Complaint, (ECF

No. 1), and Rivas-Lemus filed an Amended Complaint as a matter of right, (ECF No. 15).[6]

Rivas-Lemus brings four Counts against each Defendant in the Amended

Complaint:

> **Count I:**  Deprivation of Substantive Due Process Rights, in violation of
> 42 U.S.C. § 1983, the Fourteenth Amendment, and VA. CONST. art. 1 § 11.
> ("Due Process Count.")
>
> Specifically, she alleges that the Officers "misled [her] regarding the true
> reason they did not release her as they waited for [immigration] detainer
> paperwork," and she was detained "based on a non-mandatory immigration
> detainer request, which [the Officers] failed to serve on [her], thus
> depriving [her] of her liberty without due process of law." (ECF No. 15
> ¶¶ 72–73.)  In addition, she submits that the County "pursued policies,
> either through municipal inaction or via its influence and collaboration in
> regular meetings with the other Defendants, that led to [her] detention."
> (ECF No. 15 ¶ 74.)
>
> **Count II:**  Unlawful Seizure, in violation of 42 U.S.C. § 1983, the Fourth
> Amendment, and VA. CONST. art. 1, § 10.  ("Unreasonable Seizure
> Count.")
>
> Rivas-Lemus alleges that the Officers seized her "based on a non-
> mandatory immigration detainer request, which they failed to serve on
> [her]" and "conducted an unwanted pregnancy test on [her], thus resulting
> in an unlawful seizure." (ECF No. 15 ¶¶ 76–77.)  She also states that the
> County "pursued policies, either through municipal inaction or via its

---

[6] The Court denied as moot the County's Motion to Dismiss Rivas-Lemus's
original Complaint.  (ECF No. 32.)

influence and collaboration in regular meetings with the other Defendants, that led to [her] detention." (ECF No. 15 ¶ 78.)

**Count III:**  Cruel and Unusual Punishment, in violation of 42 U.S.C. § 1983, the Eighth Amendment, and VA. CONST. art. 1 § 9. ("Cruel and Unusual Punishment Count.")

Rivas-Lemus asserts that while detained in Henrico County Jail West, Defendants "subjected [her] to humiliating, overcrowded, poorly ventilated, and unsanitary conditions in the jail, thus constituting cruel and unusual punishment." (ECF No. 15 ¶ 81.)  She further contends that "Defendants[7] have a policy, practice, or custom of detaining inmates [like her] in overcrowded conditions[] and [that] the humiliation, sexual harassment, headache, PTSD, and other harms that resulted were foreseeable and preventable cruel and unusual punishments." (ECF No. 15 ¶ 82.)

**Count IV:**  False Imprisonment, in violation of Virginia common law. ("False Imprisonment Count.")

Rivas-Lemus declares that the Officers "misled [her] regarding the true reason they did not release her as they waited for [immigration] detainer paperwork," and that the Officers "failed to serve a copy of the [detainer] itself" so it never took effect, "thus restraining [her] liberty without [a] sufficient legal excuse." (ECF No. 15 ¶¶ 85–86.)  Additionally, she avers that the County "pursued policies, either through municipal inaction or via its influence and collaboration in regular meetings with the other Defendants, that led to [her] detention." (ECF No. 15 ¶ 74.)

In response to the Amended Complaint, the Sheriffs filed an Answer, (ECF No. 21), which prompted Rivas-Lemus to file a Motion for Judgment on the Pleadings, (ECF No. 26).  The Court has ruled on Rivas-Lemus's Motion for Judgment on the Pleadings as to the Sheriffs in a separate opinion.[8]

---

[7] The County is not expressly named in Count III but, reading her Complaint favorably, the Court presumes it is included in Rivas-Lemus's use of the term "Defendants." (ECF No. 15 ¶ 82.)

[8] The Court will deny Rivas-Lemus's Motion for Judgment on the Pleadings and encourages the parties to seek early discovery on the legal basis under which Rivas-Lemus was held.

As to the Henrico County Sheriff's Office, Rivas-Lemus filed a Motion for Default Judgment, (ECF No. 24), for its failure to "respond, plead, or otherwise defend against [Rivas-Lemus's] original [C]omplaint *and . . .* [F]irst [A]mended [C]omplaint within the 21 days provided under [Federal Rule of Civil Procedure] 12," (ECF No. 25, at 1). The Sheriff's Office filed an Opposition to the Motion for Default Judgment, arguing that the elected office of the Sheriff and the "[S]heriff's [O]ffice[] are one in the same." (ECF No. 28, at 2.) Rivas-Lemus filed a Reply. (ECF No. 30.) The Court advised Rivas-Lemus that she "must first seek the Clerk's Entry of Default before she may seek Default Judgment" without reaching the issue of whether the Sheriff's Office is a proper defendant. (ECF No. 34.) Rivas-Lemus did not seek Entry of Default from the Clerk, so the Court deemed her Motion moot. (ECF No. 34.)

The County filed the instant Motion to Dismiss, seeking to dismiss all Counts in the Amended Complaint. (ECF No. 20, at 2.) Rivas-Lemus responded, (ECF No. 22), and the County replied, (ECF No. 23). For the following reasons, the Court will grant the Motion to Dismiss and dismiss all four Counts against the County.

## II.  Standard of Review:  Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A

pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)). This principle applies only to factual allegations; however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

### III.  Analysis

The Court will dismiss all Counts against Henrico County.[9]  First, because, as a matter of Virginia law, the County does not operate Henrico County Jail West, the Court will grant the Motion to Dismiss the Due Process Count (Count I) and the Unreasonable Seizure Count (Count II).  Second, the Court will grant the Motion to Dismiss the Cruel and Unusual Punishment Count (Count III) because the Fourteenth Amendment, not the Eighth Amendment, governs Rivas-Lemus's claims as a pretrial detainee.  Third, and finally, the Court will grant the Motion to Dismiss the False Imprisonment Count (Count IV) because Virginia common law provides the County with immunity from tort liability.

### A.    The Court Will Dismiss the Due Process Count (Count I) and the Unreasonable Seizure Count (Count II) Because, Under Virginia Law, the County Does Not Operate Henrico County Jail West

#### 1.    Legal Standard: § 1983 and *Monell* Municipal Liability

Section 1983 provides a right of action for a violation of constitutional rights by persons acting under the color of state law.  "Section 1983 . . . 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred' . . . Hence, to establish liability under [§] 1983, a plaintiff must show that the defendant, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury."  *Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) (citations omitted).

---

[9] The Court's analysis of Counts I, II, and III focuses on 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.  The Court does not analyze these Counts under VA. CONST. art. 1, §§ 9, 10, 11 because "courts apply the same analysis to both federal and Virginia constitutional claims even though the claims 'arise under different sources of constitutional law.'"  *Vlaming v. W. Point Sch. Bd.*, 480 F. Supp. 3d 711, 721 (E.D. Va. 2020), *aff'd* 10 F.4th 300 (4th Cir. 2021) (quoting *Willis v. City of Va. Beach*, 90 F. Supp. 3d 597, 607 (E.D. Va. 2015)).  No party offers any argument under the Virginia Constitution.

Under "[§] 1983, a municipality is considered a 'person' and thus is subject to suit." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

However, although an underlying constitutional violation is a *necessary* element of municipal liability, it is not *sufficient*: "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 553–54 (quoting *Monell*, 436 U.S. at 691). Instead, liability will arise only "when execution of a [municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [municipality] as an entity is responsible [for] under § 1983." *Id.* at 554 (quoting *Monell*, 436 U.S. at 694).

The United States Court of Appeals for the Fourth Circuit has identified four avenues through which a § 1983 plaintiff may demonstrate a policy or custom that can create municipal liability:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens;" or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

The allegations of an unconstitutional policy or custom must be a "close fit" with the constitutional violation before the Court. *Carter*, 164 F.3d at 218. That is, "a 'plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a *particular* constitutional or statutory right will follow the

11

decision.'" *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997)) (additional citations omitted). "A plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation." *Id.*

Notably, in Virginia, the sheriff is a constitutional officer responsible for the operation of the local jails. *See* V.A. CONST. art. 7 § 4; Va. Code § 53.1-116 *et seq.* It is "well-settled" that a municipality "cannot be liable under § 1983 for the actions of its sheriff in the administration of its jail because 'under the law of Virginia[,] those actions do not embody an official policy of the [municipality].'" *Alfaro-Garcia v. Henrico Cnty.*, No. 3:15cv349, 2016 WL 5388496, at *5–6 (E.D. Va. Sept. 26, 2016) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1390 (4th Cir. 1993)).

### 2. Legal Standard: *Monell* Municipal Liability Stemming from Continuous Inaction

Read favorably, Rivas-Lemus appears to assert so called *Monell* liability for the County's inaction regarding known problems of overcrowding and insufficient funding. (*See, e.g.,* ECF No. 15 ¶¶ 45, 64, 65 (alleging cost cutting and policy involvement in medical decisions)); *Monell*, 436 U.S. at 690–91.

A policy or custom of a municipality "may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations." *Milligan v. City of Newport News*, 743 F.2d 227, 229–30 (4th Cir. 1984) (citing *Wellington v. Daniels*, 717 F.2d 932 (4th Cir. 1983)). However, because inaction is not a policy or custom that "directly commands or authorizes constitutional violations," Rivas-Lemus is required to "independently prove[] [the inaction] caused the violation[s]." *Spell v. McDaniel*, 824 F.2d 1380, 1388–89 (4th Cir. 1987) (citation omitted). The inaction

must be shown to have been "'the moving force of the constitutional violation' specifically charged," and "municipal liability may not be rested simply upon a failure to adopt policies that in retrospect can be seen to be a means by which particular unconstitutional conduct . . . might have been averted." *Milligan*, 743 F.2d at 230 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)).

### 3.      Rivas-Lemus Insufficiently Alleges a Policy or Custom

Rivas-Lemus agrees that "[i]n Virginia, the law is [straightforward:]  Virginia *sheriffs* are state constitutional officers responsible for the local jails and the activities occurring therein[,] . . . [while] *[m]unicipalities* are obligated 'to provide for the jail's physical plant,' but 'not to oversee the activities within.'"  (ECF No. 22, at 3) (emphasis added).  However, she argues that the County nevertheless "exercised sufficient policy-making influence over jail operations" to establish *Monell* liability in *violation* of Virginia's well-settled law.  (ECF No. 22, at 3–5.)  In sum, Rivas-Lemus alleges that although the County is prohibited by Virginia law from having any policy or custom that dictates how the Sheriff runs the jail, the County nonetheless did, "*as a matter of fact*[,] . . . influence and set policy with regards to the operation of [Henrico County Jail West]."  (ECF No. 22, at 4.)

Specifically, Rivas-Lemus contends that:

   (a) "Henrico County participated in regular meetings with the Sheriff where they discussed jail operations, made recommendations, and tasked members of the County Board of Supervisors to look into solutions to the problem of overcrowding;"
   (b) "Henrico County cut costs related to medical care for inmates;"
   (c) "Henrico County failed to alleviate their jail's overcrowding despite a multi-year history of issues;"
   (d) "Henrico County's County Manager stated that '[n]ot everyone in our jail needs to be there;'" and,

13

(e) "[a]pproximately 620 individuals have been detained pursuant to an immigration detainer since the Virginia Attorney General's Jan. 5, 2015 opinion that ICE detainers are unconstitutional and non-mandatory requests,"

and that these facts "demonstrate that the County exercised sufficient policy-making influence over jail operations to establish municipal liability." (ECF No. 22, at 5.) For the reasons articulated below, each allegation, even read favorably, fails to prevail because the allegations, even if true, are not relevant to Rivas-Lemus's claims of detention without due process and an unlawful seizure.

### a. Henrico County's Participation in Jail Operation Meetings Does Not Provide a Basis for Municipal Liability for Detention Practices Under Any Theory

First, Rivas-Lemus contends that because the County participated in regular jail operation meetings with the Sheriff, the County can be held liable for the Sheriff's practice of improperly detaining individuals on immigration detainers. (ECF No. 22, at 5.) Specifically, Rivas-Lemus alleges that the Sheriff presented information to the County about overcrowding issues at reoccurring meetings; that at those meetings the County had the "opportunity to ask questions and influence and collaborate with [the Sheriff] to set policy to resolve the overcrowding issues;" and that members of the County Board of Supervisors were "tasked with looking into alternatives to detention for inmates" to alleviate overcrowding. (ECF No. 15 ¶¶ 60–64.)

Even read favorably and to the extent Rivas-Lemus intends to establish *Monell* liability through the County's inaction in solving the overcrowding issues brought to its attention during these meetings, she does not state a plausible claim that such inaction was the "moving force" of a constitutional violation, rather than "a failure to adopt policies that in retrospect" could have averted constitutional violations. *Milligan*, 743 F.2d at 230.

14

Even if the Court were to take the County's participation in the Sheriff's meetings regarding overcrowding as sufficient decisions, policies, or practices to establish *Monell* liability,[10] Rivas-Lemus fails to articulate any "affirmative link" between such participation and her detention pursuant to an immigration detainer. *Carter*, 164 F.3d at 218. The Court cannot find that, even read favorably, a custom of overcrowding would plausibly be a "*specific* deficiency. . . such as to make the *specific* [Due Process and Fourth Amendment] violation[s] almost bound to happen." *Id.* (quoting *Spell*, 824 F.2d at 1390). Rivas-Lemus does not allege that the County participated in meetings regarding immigration detainers or even detention policies more broadly.

Accordingly, Rivas-Lemus's allegation regarding the County's participation in meetings with the Sheriff does not establish "an official policy or custom" of the County *that caused* the deprivation of Rivas-Lemus's Due Process rights or her unreasonable seizure as alleged in Counts I and II. Any additional allegations, even read favorably and as a whole, fail to plausibly allege municipal liability for the County.

### b. Henrico County's Reduction in Funding for Medical Care of Inmates Does Not Provide a Basis for Municipal Liability for Detention Practices Under Any Theory

Second, Rivas-Lemus alleges that "in response to overcrowding in Henrico Jails, [the County] cut cost[s] and influenced policy related to medical care for inmates as a result of rising medical costs." (ECF No. 15 ¶ 45.)

Assuming the County's decisions regarding medical care for inmates did constitute a sufficient decision, policy, or practice to establish *Monell* liability, Rivas-Lemus again

---

[10] Even read favorably, these allegations likely do *not* establish a traditional claim of *Monell* liability. Participation in meetings in which unsavory jail conditions were discussed, and research about possible solutions, does not render the Henrico County Board of Supervisors the "final policymak[er]" of the jail's policy. *Lytle*, 326 F.3d at 471.

would fail to establish a connection between the reduced funding and her detention pursuant to an immigration detainer.  Read favorably, if Rivas-Lemus is suggesting that the County did not allocate funds sufficient to support medical care to meet Eighth Amendment standards,[11] that would amount to "unfocused evidence of [an] unrelated constitutional violation[] [that] is simply not relevant to the question of whether [the] municipal decisionmaker caused the [alleged Due Process or Fourth Amendment] violation[s]." *Carter*, 164 F.3d at 218–19.

Also, Rivas-Lemus's allegation regarding the County's decision to reduce funding for the medical care of inmates does not establish "an official policy or custom" of the County *that caused* the deprivation of Rivas-Lemus's Due Process rights or her unreasonable seizure as alleged in Counts I and II.

> **c.      Henrico County's Failure to Alleviate Overcrowding Does Not Provide a Basis for Municipal Liability for Detention Practices Under Any Theory**

Rivas-Lemus's third allegation states that the County failed to address overcrowding in Henrico Jails despite "public awareness and debate on the issue" and a "known pattern of constitutional deprivations."  (ECF No. 15 ¶ 58.)

As stated above, any attempt to establish *Monell* liability through the County's inaction to alleviate the known overcrowding issues in the jails fails to establish such inaction was the "moving force" of the alleged constitutional violations. *Milligan*, 743 F.2d at 230.

Even if this allegation were able to establish *Monell* liability through an "omission . . . that manifest[s] deliberate indifference to the rights of citizens," Rivas-

---

[11] The Court will later explain that the United States Constitution's Fourteenth Amendment, and not the Eighth, applies to Rivas-Lemus's detention in this matter.

Lemus does not plausibly allege how the County's omission and indifference to overcrowded jails would affect the Sheriff's decision to detain her pursuant to an immigration detainer. *Lytle*, 326 F.3d at 471. Therefore, Rivas-Lemus has not plausibly stated a claim that the County was deliberately "indifferent to the risk of [Rivas-Lemus's] specific injury or that it was the moving force behind her [Due Process and Fourth Amendment] deprivation." *Carter*, 164 F.3d at 218.

Consequently, Rivas-Lemus's allegation regarding the County's failure to alleviate overcrowding in Henrico jails does not establish an "omission" by the County *that caused* the deprivation of Rivas-Lemus's Due Process rights or her unreasonable seizure as alleged in Counts I and II.

> **d.  The Henrico County Manager's Statements Regarding Overcrowding Do Not Provide a Basis for Municipal Liability for Detention Practices Under Any Theory**

To establish the County's knowledge of jail overcrowding, Rivas-Lemus's fourth allegation quotes the Henrico County Manager stating that "[n]ot everyone in [the County's] jail needs to be there." (ECF No. 15 ¶ 59.)

Rivas-Lemus seemingly offers the County Manager's statement to prove that the County failed to alleviate a known issue of overcrowding. However, as explained above, the County's inaction regarding overcrowding does not drive the constitutional violations alleged as required by *Milligan*. And even if the inaction were an omission sufficient to establish *Monell* liability, Rivas-Lemus does not sufficiently link the omission to her detention pursuant to an immigration detainer.

Also, Rivas-Lemus's allegation regarding the County Manager's statement on overcrowding in Henrico's jails does not establish an "omission" of the County *that*

*caused* the deprivation of Rivas-Lemus's Due Process rights or her unreasonable seizure alleged in Counts I and II.

> ### e.    The Number of Individuals Held Pursuant to ICE Immigration Detainers Does Not Provide a Basis for Municipal Liability Under Any Theory

Rivas-Lemus's fifth allegation (which concerns the approximate number of individuals held on immigration detainers since January 5, 2015) does not specify County actions that could be analyzed under the *Monell* liability framework.  Her Amended Complaint merely states that:

> Defendants have a policy, practice, or custom of[] delaying the release of certain inmates, as they coordinate with ICE in the event an immigration detainer request may be issued; [] failing to inform certain inmates they are being held as a result of an ICE detainer request . . . ; [and] detaining certain inmates for a period of time beyond 48 hours from when they would normally be released . . . due to the existence of an immigration detainer request.

(ECF No. 15 ¶ 69.)

Rivas-Lemus does not submit any facts, beyond the number of individuals held on immigration detainers, plausibly establishing the "official policy or custom" of delaying the release of inmates.  Further, no factual allegations, even read favorably, suggest that the County instituted such a policy for the Sheriff.  The number of individuals detained pursuant to ICE immigration detainers alone cannot establish "an official policy or custom" of the County that caused the deprivation of Rivas-Lemus's Due Process rights or her unreasonable seizure as alleged in Counts I and II.

Because Rivas-Lemus's allegations of the County's involvement in jail operation meetings, decision making regarding funding for medical care, and an indifference to a history of overcrowding, even considered as a whole, are far afield from her alleged

18

constitutional injuries, Rivas-Lemus fails to state a claim for the County's municipal

liability upon which relief can be granted for the Due Process Count (Count I) and the

Unreasonable Seizure Count (Count II).  The Court will dismiss Counts I and II against

the County.

**B.    The Court Will Dismiss Count III Because the Eighth Amendment
        Does Not Apply to Pretrial Detainee Claims and the Court Cannot
        Evaluate the Claim Under the Amendment Cited By Rivas-Lemus**

With respect to Rivas-Lemus's Cruel and Unusual Punishment Claim, because she

was a "'pretrial detainee[12] and not a convicted prisoner,' the Fourteenth Amendment, and

not the Eighth Amendment, governs [her] claim." *Mays v. Sprinkle*, 992 F.3d 295, 300

(4th Cir. 2021) (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)).

The Eighth Amendment of the United States Constitution prohibits the infliction of

cruel and unusual punishments.  U.S. CONST. amend. VIII.  "Eighth Amendment scrutiny

is appropriate only after the state has complied with the constitutional guarantees

traditionally associated with criminal prosecutions." *Martin*, 849 F.2d at 870 (quoting

*Ingraham v. Wright*, 430 U.S. 651, 671–72 n.40 (1977)).

Notably, "while the convicted prisoner is entitled to protection only against

punishment that is 'cruel and unusual," the pretrial detainee, who has yet to be adjudicated

guilty of any crime, may not be subjected to *any* form of 'punishment.'" *Id*. (quoting *City

of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  To establish that a condition of

confinement is "punishment," the pretrial detainee must show either that it was

"(1) imposed with an expressed intent to punish[;] or[,] (2) not reasonably related to a

---

[12] Individuals that are held on immigration detainers are classified as pretrial
detainees. *See Aslanturk v. Hott*, 459 F. Supp. 3d 681 (E.D. Va. 2020) (applying Due
Process standards for pretrial detainees to a citizen of Turkey detained by ICE).

19

legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)).

While Rivas-Lemus experienced "stifling and unbearable heat," "overcrowding[,] . . . unsanitary conditions[,]" sexual harassment, and "a painful headache" without medication at Henrico Jail West, she was a pretrial detainee at the time. (ECF No. 15 ¶¶ 37–38, 42–43.)  But the Eighth Amendment is an improper avenue for claims regarding the jail's conditions of confinement.  Even recognizing that the Fourteenth Amendment would afford Rivas-Lemus a more generous level of review, the Court cannot *sua sponte* evaluate a claim under proper law that is not alleged.  Neither party provided insight into what should be a Fourteenth Amendment analysis.  Thus, the Court will dismiss the Cruel and Unusual Punishment Count (Count III) against the County.

## C. The Court Will Dismiss Count IV Because the County Is Immune from Tort Liability

Finally, Rivas-Lemus brings a False Imprisonment Count against the County, but this claim fails because the County is immune from tort liability.  Indeed, the Court has previously determined that the County was afforded immunity in a nearly identical case, and Rivas-Lemus's counter arguments against the precedent are misplaced.  *See Alfaro-Garcia*, 2016 WL 5388946, at *5 (citing *Strickler*, 989 F.2d at 1390).

Pursuant to the doctrine of sovereign immunity, "the Commonwealth of Virginia '[is] immune from liability for torts committed by its officers, employees[,] and agents.'" *Id.* at *8 (quoting *Doud v. Commonwealth*, 717 S.E.2d 125, 125 (Va. 2011)).  "[T]his protection extends to municipalities in the exercise of their governmental functions." *Id.* (alteration in original) (quoting *Carter*, 164 F.3d at 221).

Although Rivas-Lemus acknowledges that "[t]he doctrine of sovereign immunity in Virginia is 'alive and well,' and [that it] offers government entities protection against suits for tort liability[,]" she argues that the immunity "does not extend to intentional torts[,] . . . such as false imprisonment" or "actions [taken] outside the scope of employment." (ECF No. 22, at 15 (citing *Messina v. Burden*, 321 S.E.2d 657, 660, 662 (Va. 1984); *Elder v. Holland*, 155 S.E.2d 369, 376–73 [sic] (Va. 1967)). Rivas-Lemus is correct that government *employees* acting outside the scope of their employment are not afforded sovereign immunity. *Messina*, 321 S.E.2d at 662. It is also true that a government *employee* may be held liable for intentional torts. *Elder*, 155 S.E.2d at 371. But because the County, a municipality, rather than an employee, is the defendant protected by sovereign immunity here, Rivas-Lemus's arguments do not apply.

Therefore, sovereign immunity bars Rivas-Lemus's false imprisonment claim against the County, and the Court will dismiss Count IV.

## IV.  Conclusion

For the foregoing reasons, the Court will grant the County's Motion to Dismiss. (ECF No. 19.)

The Court will dismiss without prejudice all Counts against the County. The Due Process Count (Count I), the Unreasonable Seizure Count (Count II), the Cruel and Unusual Punishment Count (Count III), and the False Imprisonment Count (Count IV)

remain against the Henrico County Sheriff's Office, the Sheriffs, and the Officers in

their entirety.

An appropriate Order shall issue.

Date: 9/27/2022
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge